# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANA MOLNAROVA,<br><br>Plaintiff,<br><br>v.<br><br>SWAMP WITCHES INC. LLC; SWAMP WITCHES INC.; and MICHAEL MOORE,<br><br>Defendants. | Case No.: 2:23-CV-2157<br><br>**JURY TRIAL DEMANDED**<br><br>**PLAINTIFFS' COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, DECEPTIVE TRADE PRACTICES, DEFAMATION, TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP, AND TELECOMMUNICATIONS HARASSMENT** |

Plaintiff Jana Molnarova (hereinafter "**Ms. Molnarova**" or "**Plaintiff**") through her undersigned counsel, hereby states for her Complaint against Defendants Swamp Witches Inc. LLC ("**Swamp Witches**"), Swamp Witches Inc. ("**SWI**") and Michael Moore ("**Mr. Moore**") (Swamp Witches, SWI, and Mr. Moore are hereinafter collectively referred to as "**Defendants**"), with personal knowledge as to her own actions and upon information and belief to those of others, as follows:

## NATURE OF THE CLAIMS

1.      This is an action for copyright infringement under The Copyright Act, as amended, 17 U.S.C. § 101 *et seq.*; federal trade dress infringement and unfair competition under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1051 *et seq.*; deceptive trade practices under Ohio Revised Code § 4165.02; defamation under Ohio law; tortious interference with a business relationship under Ohio law; and telecommunications harassment under Ohio Revised Code § 2917.21.

2.      Ms. Molnarova has initiated this action to protect one of her most valuable assets, namely, (1) the creative design of her flagship product, (2) the goodwill and consumer recognition

1

that she has developed in her distinctive trade dress, and (3) her business and business reputation that she has worked diligently to cultivate.

3. This action seeks injunctive relief, damages, and all other appropriate relief arising from Defendants' unlawful conduct.

## THE PARTIES, JURISDICTION, AND VENUE

4. Ms. Molnarova is an individual, who is a citizen of Slovakia and resides in Slovakia.

5. Ms. Molnarova operates a craft business, making sales primarily via the online e-commerce platform Etsy.

6. Upon information and belief, Mr. Moore is an individual, residing at 5552 Royal Pointe Drive, Dublin, Ohio 43016.

7. Upon information and belief, Swamp Witches is an Ohio limited liability company with its principal place of business at 5552 Royal Pointe Drive, Dublin, Ohio 43016, which was formed on June 8, 2023.

8. Upon information and belief, SWI is a purported business entity under whose name Mr. Moore has conducted business, with its principal place of 5552 Royal Pointe Drive, Dublin, Ohio 43016.

9. Upon information and belief, Swamp Witches is the *alter ego* of Mr. Moore.

10. Upon information and belief, SWI is the *alter ego* of Mr. Moore.

11. This Court has subject matter jurisdiction over the claims asserted in this action because they arise under the Copyright Act and the Lanham Act, and jurisdiction is proper in accordance with 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has pendent, ancillary and/or supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

13.     Furthermore, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), and there exists complete diversity of citizenship between the parties, so this Court further has subject matter jurisdiction in accordance with 28 U.S.C. § 1332.

14.     This Court has personal jurisdiction over Mr. Moore because he is a resident of the State of Ohio.

15.     This Court further has personal jurisdiction over Mr. Moore because, upon information and belief, he regularly transacts business within Ohio and has an interest in, uses, or possesses real property in Ohio, such that personal jurisdiction exists pursuant to Ohio Revised Code § 2307.382.

16.     This Court further has personal jurisdiction over Mr. Moore because the actions he has taken which give rise to the instant action and have caused injury to Ms. Molnarova occurred in Ohio, such that personal jurisdiction exists pursuant to Ohio Revised Code § 2307.382.

17.     This Court has personal jurisdiction over Swamp Witches because it is organized and has its principal place of business in Dublin, Ohio.

18.     This Court has further personal jurisdiction over Swamp Witches because, upon information and belief, Swamp Witches regularly transacts business within Ohio, has an interest in, uses, or possesses real property in Ohio, and because the actions Swamp Witches has taken which give rise to the instant action have caused injury to Ms. Molnarova occurred in Ohio, such that personal jurisdiction exists pursuant to Ohio Revised Code § 2307.382.

19.     This Court has personal jurisdiction over SWI because, upon information and belief, it has its principal place of business in Dublin, Ohio.

3

20.     This Court has further personal jurisdiction over SWI because, upon information and belief, SWI regularly transacts business within Ohio, has an interest in, uses, or possesses real property in Ohio, and because the actions SWI has taken which give rise to the instant action have caused injury to Ms. Molnarova occurred in Ohio, such that personal jurisdiction exists pursuant to Ohio Revised Code § 2307.382.

21.     Venue is proper in the United States District Court for the Southern District of Ohio under 28 U.S.C. § 1391(b) because, upon information and belief, all Defendants reside in this district and may be found in this district.

22.     Venue is also proper in the United States District Court for the Southern District of Ohio under 28 U.S.C. § 1391(c) because a substantial part of the acts giving rise to this case, including the infringement of Ms. Molnarova's intellectual property rights, occurred in the Southern District of Ohio, and all Defendants are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### Ms. Molnarova's Business & Her Intellectual Property Rights

23.     Ms. Molnarova operates a digital shop called CrystalyneShop on the e-commerce platform Etsy under the username Crystalyne.

24.      Since at least July 15, 2022, Ms. Molnarova has sold a unique product called the "**Tumblerone**" via Etsy (three examples of the Tumblerone are pictured below).  A screenshot of an order confirmation, dated July 15, 2022 is annexed hereto as **Exhibit 1**.

4



25.     The Tumblerone is a product that permits a user to decorate, or "bling," a tumbler or cup without physically touching the tumbler or cup after it is prepared by the user.

26.     The Tumblerone consists of three detachable components including (1) a titled base, (2) a spinning platform, and (3) a tumbler holder.

27.     Ms. Molnarova designed the Tumblerone using her own creativity and without any assistance from another person.

28.     Ms. Molnarova 3D prints the Tumblerone and ships them directly to customers.

29.     Ms. Molnarova is the owner of a copyright in the Tumblerone, because she created the Tumblerone in Slovakia, is a Slovak national, and first published the Tumblerone from Slovakia.

30.     Slovakia joined the Berne Convention for the Protection of Literary and Artistic Works (the "**Berne Convention**") on January 1, 1993.

31.     The United States of America joined the Berne Convention on March 1, 1989.

32.     Ms. Molnarova is the owner of the distinctive trade dress that adorns the Tumblerone, consisting, *inter alia*, of the distinctive tumbler holder portion of the Tumblerone, which consists of four aesthetically pleasing and curved fins that secure the inside of a tumbler to the Tumblerone (the "**Tumblerone Trade Dress**").

5

33.    Ms. Molnarova has spent significant time and financial resources in establishing her business, including to ensure that customers associate the Tumblerone Trade Dress with her as its source.

34.    Customers, in fact, recognize Ms. Molnarova as the source of the Tumblerone, including multiple customers who have interacted with Defendants' social media posts and referred to Ms. Molnarova by name in such interactions and others who have contacted Ms. Molnarova directly regarding said posts.

**Defendants' Unlawful Activities & Ms. Molnarova's Efforts To Stop Them**

35.    Upon information and belief, since at least in March 2023, Defendants have sold an imitation of the Tumblerone (the "**Knockoff Tumblerone**"), a virtually identical replication of the Tumblerone (the Knockoff Tumblerone and the Tumblerone are both pictured below).

 

**The Knockoff Tumblerone (pictured above)**

6

  

**The Tumblerone (pictured above)**

36.     On April 4, 2023, Ms. Molnarova became aware that someone was selling an unauthorized copy of the Tumblerone.  Annexed hereto as **Exhibit 2** is a screenshot of a direct message from the administrator of vendor-specific Facebook group warning Ms. Molnarova that someone was selling an unauthorized copy of the Tumblerone, which included a link to a TikTok video displaying Defendants' content, promoting the Knockoff Tumblerone.

37.     Defendants sell and market, and have sold and marketed, the Knockoff Tumblerone via a website, accessible https://swampwitchesinc.com/ (last accessed June 27, 2023).  As of June 27, 2023, the images of the Knockoff Tumblerone pictured below are the first images to appear when one accesses Defendants' website.



38.     Defendants are active on various social media platforms, and sell and market, and have sold and marketed, the Knockoff Tumblerone via TikTok (@swampwitchesinc) and Instagram (@thecomedyactor).

39.     In an Instagram post, published on March 29, 2023, Mr. Moore announced that Defendants (purportedly via SWI) would be selling the Knockoff Tumblerone for $40 via preorder and thereafter for $50.

40.     In his March 29, 2023 Instagram post announcing Defendants' sale of the Knockoff Tumblerone, Mr. Moore explicitly stated that there was "someone else out there selling it," referring to Ms. Molnarova and that Ms. Molnarova was "the only one that had it."

41.     Mr. Moore stated that Ms. Molnarova "wanted so much for [the Tumblerone], it was insane."

42.     By Mr. Moore's own admissions, Defendants copied the Tumblerone directly from Ms. Molnarova and Mr. Moore knew that the Tumblerone was unique to Ms. Molnarova.

43.     In multiple additional videos published on Instagram and TikTok by Mr. Moore in late March and early April of 2023, Mr. Moore continued to sell and market the Knockoff Tumblerone.

44.     In an April 2, 2023 video published on TikTok, Mr. Moore announced that he had sold 51 of the Knockoff Tumblerones.

45.     On April 4, 2023, TikTok user "Realhousewivesofblingfacebook" recognized that the knockoff Tumblerone was copied from Ms. Molnarova, and commented on one of Mr. Moore's TikTok videos: "You did not make it," and that the "Tumbler turner [was] copied from Jana [Molnarova]." Defendants, under the username "Swamp Witches Inc.," responded to the comment

of Realhousewivesofblingfacebook. A true and correct copy of a screenshot of comments made upon Defendants' April 4, 2023 TikTok post is annexed hereto as **Exhibit 3**.

46.     Also on April 4, 2023 Defendants, under the username "Swamp Witches Inc.," responded to a comment from TikTok user pewpewdevices, and stated that he was "[i]nspired by" Ms. Molnarova's Tumblerone when he created the Knockoff Tumblerone. A true and correct copy of a screenshot of additional comments made upon Defendants' April 4, 2023 TikTok post is annexed hereto as **Exhibit 4**.

47.     On or about April 4, 2023, Ms. Molnarova sent Defendants a letter via email at swampwitchesinc@gmail.com demanding that Defendants cease and desist from selling the Knockoff Tumblerone. A true and correct copy of Ms. Molnarova's April 4, 2023 cease and desist letter is annexed hereto as **Exhibit 5**.

48.     In an April 5, 2023 video published on TikTok, Mr. Moore addressed a user's comment noting that the Knockoff Tumblerone had been "copied from Jana," wherein he stated that he was "selling an affordable tumbler turner" and that his was "designed with the inspiration of one that was on the market," but wherein he denied that the Knockoff Tumblerone is an exact copy of the Tumblerone, despite their virtually identical appearance.

49.     On April 5, 2023, Ms. Molnarova sent an email to Shopify requesting that Shopify take down Defendants' listings for the Knockoff Tumblerones. A true and correct copy of Ms. Molnarova's April 5, 2023 email to Shopify is annexed hereto as **Exhibit 6**.

50.     On April 6, 2023, TikTok user "Meagan" recognized that the Knockoff Tumblerone was copied from Ms. Molnarova, and commented on one of Mr. Moore's TikTok videos: "Jan's candles CANNOT BE REPLICATED" and "I love your spice level," referring to Ms. Molnarova's product as "Jan's candles" (a comedic reference to a classic episode of the popular television show

"The Office") and indicating that she was aware that the Tumblerone originated with Ms. Molnarova. Defendants (via username "Swamp Witches Inc.") responded directly to this comment. A true and correct copy of a screenshot of comments made upon Defendants' April 6, 2023 TikTok post is annexed hereto as **Exhibit 7**.

51. In two April 6, 2023 videos published on TikTok, Mr. Moore used inflammatory intimidation tactics including threats of legal action and "doxing" (the practice of publishing someone's identifying information without their consent).

52. In the first of Mr. Moore's April 6, 2023 TikTok videos, Mr. Moore mentioned "Jana" by name, and by identifying "John," one John Dale ("**Mr. Dale**"), Ms. Molnarova's partner, Mr. Moore revealed that he had received Ms. Molnarova's April 4, 2023 cease and desist letter via email because Mr. Dale was listed as being blind carbon copied on the same.

53. In the first of Mr. Moore's April 6, 2023 TikTok videos, Mr. Moore threatened that "if you misrepresent yourself as legal, that's a crime, buddy. Bye. Get a better legal team, Jana, Jana, Jan," thereby publicly and falsely accusing Ms. Molnarova, and/or her associate, of having committed a crime.

54. In the second of Mr. Moore's April 6, 2023 TikTok videos, Mr. Moore, responded to Mr. Dale's comment (via username pewpewhome) that "[his] name is in the header of the Cease & Desist you received two days ago. Thanks for confirming you've received and read it." In his response, Mr. Moore explicitly acknowledged that he had received and read Ms. Molnarova's cease and desist letter.

55. In the second of Mr. Moore's April 6, 2023 TikTok videos, Mr. Moore threateningly refers to "17 U.S.C. 512 (f)" of the Copyright Act falsely and publicly implying that Ms. Molnarova and/or her associate had violated the Copyright Act by "misrepresenting [her]

copyright" and stating that "that's a problem," while also sarcastically acting as if he had accidentally left the Knockoff Tumblerone in view of the camera.

56. On April 7, 2023, Mr. Moore, despite the fact that none of his other items are sold with product names, published a video on TikTok soliciting a name for the Knockoff Tumblerone from his followers, and stating that "she [the Knockoff Tumblerone] seems to have gotten a little bit of attention" and imploring his followers to "get petty" and stating "we bitchy" and sarcastically suggesting "video restored" as a name for the Knockoff Tumblerone and stating "so much for getting that video taken down," all referring to Ms. Molnarova's previous efforts to stop his sale of the Knockoff Tumblerone.

57. Upon information and belief, Mr. Moore solicited a name for the Knockoff Tumblerone to encourage intimidating and misogynistic abuse against Ms. Molnarova by his followers.

58. Mr. Moore's efforts to solicit abuse towards Ms. Molnarova succeeded, as one of his followers mockingly suggested "Jana Banana Fanna Fonana Fee-fi fo Jana" as a name for the Knockoff Tumblerone. A true and accurate screenshot of comments under Mr. Moore's April 7, 2023 video is annexed hereto as **Exhibit 8**.

59. Another user mockingly suggested "Witch, Bitch not Jana" and "Bedazzled Bitch Witch" as names for the Knockoff Tumblerone. *See* **Exhibit 8.**

60. In an April 28, 2023 video published on TikTok, Mr. Moore announced a second pre-sale of an additional 50 Knockoff Tumblerones, that he had two new printers to aid in production of the Knockoff Tumblerones, and that he would be reopening his website for orders on May 1, 2023.

61. In an April 29, 2023 video published on TikTok, Mr. Moore announced that he was growing his business and signed a lease for space at a former high school in Kingston, Ohio, to facilitate having a "wall of printers," and solicited additional orders of the Knockoff Tumblerones and stated, again, that his website would be reopened on May 1, 2023.

62. In a May 1, 2023 video published on TikTok, Mr. Moore announced that there were Knockoff Tumblerones available for purchase on his website, and displayed the Knockoff Tumblerones in different colors.

63. On May 1, 2023, Shopify sent an email to Ms. Molnarova informing her that "the content listed as infringing in the Digital Millennium Copyright Act (DMCA) Takedown Notice submitted on April 5, 2023 has been taken offline." A true and correct copy of Shopify's May 1, 2023 email is annexed hereto as **Exhibit 9**.

64. Also on May 1, 2023, Shopify sent an email to Ms. Molnarova informing her that Defendants had filed a Counter Notice, and that, the content that had previously been removed would be made available again unless "Shopify first receives notice from you that you have filed an action seeking a court order to restrain the Merchant from engaging in infringing activity, pursuant to section 512(g)(2)(c) of the US Copyright Act." A true and correct copy of Shopify's second May 1, 2023 email is annexed hereto as **Exhibit 10**.

65. On May 2, 2023, Mr. Moore posted a video on TikTok, with the caption "[h]ere we go again," acknowledging that the Knockoff Tumblerone had been removed from Defendants' website because Ms. Molnarova "went to Shopify to cause [a] little issue," and encouraging customers to order the Knockoff Tumblerone by reaching out to him via email or his website, and stating that Ms. Molnarova would be hearing from his attorney and that he would be reopening presales because Ms. Molnarova "made [him] mad."

66.     Also on May 2, 2023, Kaylin Masis, an attorney with the law firm Braun IP Law, LLC ("Braun"), sent Ms. Molnarova a cease and desist letter "on behalf of Swamp Witches, Inc." via email.  A true and correct copy of Ms. Masis' May 2, 2023 email and cease and desist letter is annexed hereto as **Exhibit 11**.

67.     In Defendants' May 2, 2023 cease and desist letter, Ms. Masis claimed that Braun represented "the owner of 'Swamp Witches, Inc.' (pending incorporation)."  *See* **Exhibit 11**.

68.     At that time, Ms. Molnarova had not been able to find any evidence that Swamp Witches, Inc. was ever incorporated or in the process of being incorporated.

69.     Since, upon information and belief, SWI was never incorporated, despite Defendants and their counsel holding out that SWI, in fact, was an incorporated corporation.

70.     In Defendants' May 2, 2023 cease and desist letter, Ms. Masis falsely accused Ms. Molnarova of various misdeeds, including violating 17 U.S.C. § 512(f), engaging in deceptive trade practices, false light, fraudulently misrepresenting to the public that Ms. Molnarova owns intellectual property rights in the Tumblerone, engaging in tortious interference with a contract, and defaming Defendants. *See* **Exhibit 11**.

71.     On or about May 6, 2023, Defendants created a new listing on Shopify, offering the Knockoff Tumblerones for sale under the name "Spectral Spindle" (the "**Second Listing**"),

72.     On May 7, 2023 Ms. Molnarova, again, filed a DMCA Takedown Notice with Shopify requesting that Shopify remove the Second Listing.  Annexed hereto as **Exhibit 12** is Ms. Molnarova's May 7, 2023 email to Shopify requesting the removal of the Second Listing.

73.     On May 9, 2023, Shopify removed the Second Listing. Annexed hereto as **Exhibit 13** is Shopify's May 9, 2023 email to Ms. Molnarova confirming its removal of the Second Listing.

74.     Also on May 9, 2023, Shopify sent a second email to Ms. Molnarova informing her that Defendants had filed another DMCA Counter Notice, this time regarding the Second Listing, such that the content that had previously been removed would be made available again unless "Shopify first receives notice from you that you have filed an action seeking a court order to restrain the Merchant from engaging in infringing activity, pursuant to section 512(g)(2)(c) of the US Copyright Act."  Annexed hereto as **Exhibit 14** is Shopify's second May 9, 2023 email to Ms. Molnarova.

75.     On May 12, 2023, Mr. Moore posted a video on TikTok announcing that Defendants had shipped most of the first 50 Knockoff Tumblerones, that Defendants had started a second round of 50 Knockoff Tumblerones, but "someone had my fucking listing pulled again, because bullshit" and that customers should reach out to Mr. Moore directly to make orders and noted "we're not going to stop selling my tumbler turner."

76.     On May 15, 2023, Defendants again created a new listing on Shopify, offering the Knockoff Tumblerones for sale.

77.     In a May 24, 2023 post on Instagram, Mr. Moore announced that he was again offering for sale the Knockoff Tumblerone under the name Spectral Spindles via his website.



78.     On May 25, 2023, Ms. Molnarova received an email from Shopify indicating that Defendants' listing, which had previously been removed pursuant to a DMCA Takedown Notice and was subject to a Counter Notice, had been reposted because Shopify "did not receive notice that [Ms. Molnarova] filed an action seeking a court order to restrain [Defendants] from engaging in infringing activity pursuant to section 512(g)(2)(c) of the U.S. Copyright Act."  A true and correct copy of Shopify's May 25, 2023 email is annexed hereto as **Exhibit 15**.

79.     On June 7, 2023, Ms. Molnarova's counsel responded to Ms. Masis' May 2, 2023 letter, denied all wrongdoing, and placed Defendants on notice that had engaged in and were currently engaging in multiple illegal activities.  A true and correct copy of a letter from Ms. Molnarova's counsel is annexed hereto as **Exhibit 16**.

80.     Specifically, Ms. Molnarova's counsel's June 7, 2023 letter pointed out that "[t]here is no record of Swamp Witches having a pending incorporation of any kind on file with

the Secretary of State in Ohio. [] So, in fact, your client is providing false and misleading information in holding himself out as a corporate entity."

81.     On June 8, 2023, the day after Defendants' counsel received Ms. Molnarova's counsel's letter, Defendants filed Articles of Incorporation to formally organize "Swamp Witches Inc. LLC," incorporating the abbreviation "Inc." into its name despite Swamp Witches being organized as a limited liability company in Ohio.  A true and correct copy of Swamp Witches Articles of Organization is annexed hereto as **Exhibit 17**.

82.     On June 14, 2023, Defendants received an Agent Requirement Letter from the Ohio Secretary of State indicating that the business entity named "Swamp Witches Inc. LLC" failed to maintain a required statutory agent and that the business entity would be cancelled if no agent was named within thirty (30) days. A true and correct copy of the Agent Requirement Letter dated June 14, 2023 is annexed hereto as **Exhibit 18**.

83.     On June 20, 2023, Ms. Molnarova released a new derivative of the Tumblerone, called the "**MAXI**," designed to work with a larger 40-ounce tumbler.  A true and correct copy of screenshots of Ms. Molnarova's social media posts announcing the release of the MAXI product are annexed hereto as **Exhibit 19**.

84.     The MAXI has the same creative design as the Tumblerone, so is covered by the same copyright.

85.     The MAXI bears the Tumblerone Trade Dress.

86.     Within one week of Ms. Molnarova announcing the release of the MAXI, on June 29, 2023, Defendants announced that they were selling a Knockoff Tumblerone designed to work with a larger 40-ounce tumbler, directly copying Ms. Molnarova's MAXI.  A true and correct copy of a June 29, 2023 Instagram post by Defendants is annexed hereto as **Exhibit 20**.

87.     In Defendant's June 29, 2023 Instagram post announcing his newly sized Knockoff Tumblerone, Defendants used two "emojis," one a "face with peeking eye" and the other a "smirking face," and captioned the post "Working on something else today…," clearly conveying sarcasm and indicating that Defendants are aware that the newly sized version of the Knockoff Tumblerone was a direct copy of Ms. Molnarova's MAXI. *See id.*

**COUNT I**
**Copyright Infringement**
**(17 U.S.C. § 501)**

88.     Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

89.     Ms. Molnarova owns valid copyrights in the Tumblerone.

90.     Ms. Molnarova is a national of Slovakia.

91.     Ms. Molnarova created the Tumblerone in Slovakia, and first published the Tumblerone from Slovakia.

92.     Ms. Molnarova is, and has always been, the sole owner of all rights, title, and interest to all copyrights in the Tumblerone.

93.     The Tumblerone is a wholly original work that is copyrightable under the laws of Slovakia.

94.     Ms. Molnarova has never authorized Defendants to reproduce, distribute, prepare derivative works, or publicly display the Tumblerone or any portion thereof.

95.     Defendants are willfully infringing Ms. Molnarova copyright in the Tumblerone pursuant to 17 U.S.C. § 501 by reproducing, displaying, distributing, and creating derivative works of the Tumblerone without Ms. Molnarova's permission in violation of Ms. Molnarova's exclusive rights under 17 U.S.C. § 106.

96.     Defendants' copyright infringement has been and continues to be willful, done with full knowledge of Ms. Molnarova's copyright, and in conscious disregard of her exclusive rights in the Tumblerone.

97.     As a result of Defendants' copyright infringement, Ms. Molnarova has suffered and will continue to suffer substantial injury, loss, and damage to its rights in the Tumblerone.

98.     Ms. Molnarova is without an adequate remedy at law, such that she is entitled to injunctive relief, pursuant to 17 U.S.C. § 502, restraining Defendants, and any related persons or entities, from engaging in further acts of copyright infringement.

99.     Ms. Molnarova is entitled to recover Defendants' profits, gains, or other advantages they have obtained as a result of their copyright infringement.

100.    As shown by Defendants' blatant disregard of Ms. Molnarova's copyright and other intellectual property rights, upon information and belief, unless Defendants are enjoined by the Court, Defendants will continue to infringe Ms. Molnarova's copyright and wrongfully profit from this activity.

## COUNT II
### Federal Trade Dress Infringement
### (15 U.S.C. § 1125)

101.    Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

102.    Defendant's conduct set forth herein constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

103.    Ms. Molnarova has used the distinctive Tumblerone Trade Dress in connection with the Tumblerone in interstate commerce continuously since at least July 15, 2022.

104. Ms. Molnarova has invested substantial financial resources, time, and effort promoting the Tumblerone Trade Dress in connection with the marketing and sale of the Tumblerone in interstate commerce.

105. The Tumblerone Trade Dress is non-functional, as its features are not dictated by the function of the Tumblerone, namely, "blinging" or decorating tumblers or cups.

106. The Tumblerone Trade Dress is distinctive at least because consumers associate the Tumblerone Trade Dress with Ms. Molnarova as the source of the Tumblerone.

107. Since customers associate the Tumblerone Trade Dress with Ms. Molnarova as the source of the Tumblerone, the Tumblerone trade dress is strong, and has acquired secondary meaning in the minds of relevant consumers.

108. Consumers, upon seeing the Knockoff Tumblerone in the marketplace, are likely to associate it with Ms. Molnarova and assume that, since it bears the Tumblerone Trade Dress, it originates with Ms. Molnarova or, at least, is authorized, sponsored, approved, endorsed or licensed by Ms. Molnarova.

109. Defendants manufacture, distribute, advertise, offer for sale, or sell the Knockoff Tumblerone in interstate commerce, bearing a trade dress that is identical, or at least substantially similar to the Tumblerone Trade Dress.

110. The Tumblerone and the Knockoff Tumblerone appear virtually identical to one another.

111. The Tumblerone and the Knockoff Tumblerone are the same type of product, designed to perform the exact same function.

112. The Tumblerone and the Knockoff Tumblerone are sold in the same, or highly similar, online marketing channels.

19

113.    Defendants selected the design of the Knockoff Tumblerone specifically to copy and imitate the Tumblerone and the Tumblerone Trade Dress that adorns it.

114.    Defendants' manufacture, advertising, distribution, selling and/or offering to sell infringing products bearing the Tumblerone Trade Dress copied from and confusingly similar to Ms. Molnarova's Tumblerone product, are likely to cause confusion on the part of purchasers and potential purchasers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115.    Defendants' unauthorized use of the Tumblerone Trade Dress in interstate commerce on or in connection with the sale of goods as described above constitutes direct or contributory trade dress infringement under 15 U.S.C. § 1125(a).

116.    As a direct and proximate result of Defendants' trade dress infringement, Ms. Molnarova has suffered and will continue to suffer irreparable harm, including loss of income, profits, and goodwill, and Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

117.    As shown by Defendants' blatant disregard of Ms. Molnarova's trade dress and other intellectual property rights, Defendants intend to continue their unlawful conduct, unless enjoined by this Court.

118.    Upon information and belief, Defendants engaged in their unlawful activities intentionally and willfully.

119.    Defendants' acts of trade dress infringement have caused and will continue to cause further irreparable injury to Ms. Molnarova if Defendants are not restrained by this Court from further violation of Ms. Molnarova's rights, and she has no adequate remedy at law.

**COUNT III**
**Federal Unfair Competition**
**(15 U.S.C. § 1125)**

120.    Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

121.    Defendants' conduct set forth herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

122.    Defendants' unauthorized marketing of the Knockoff Tumblerone in interstate commerce under the Tumblerone Trade Dress is intended, and is likely to confuse, mislead, or deceive the public and the relevant consumers of the parties' goods as to the origin, source, sponsorship, or affiliation of Defendants' goods with Ms. Molnarova, and is intended, and is likely to cause and has caused such parties to believe in error that Defendants' goods are authorized, sponsored, approved, endorsed or licensed by Ms. Molnarova, or that Defendants are in some way affiliated with Ms. Molnarova.

123.    Defendants' unlawful activities have caused, and unless and until enjoined by this Court, will continue to cause irreparable injury and other damage to Ms. Molnarova's business, reputation, and goodwill in its Tumblerone Trade Dress.

124.    Defendants have made and will continue to make profits and/or gains to which they are not entitled to in law or equity.

125.    As shown by Defendants' blatant disregard of Ms. Molnarova's trade dress and other intellectual property rights, Defendants intend to continue their infringing acts, unless restrained by this Court.

126.    Upon information and belief, Defendants engaged in their unlawful activities intentionally and willfully.

127.    As a direct and proximate result of Defendants' unlawful actions, Defendants have damaged and will continue to damage Ms. Molnarova, and she has no adequate remedy at law.

128.    As a direct and proximate result of Defendants' unlawful actions, Ms. Molnarova is entitled to a recovery of reasonable attorneys' fees and costs incurred herein.

**COUNT IV**
**Deceptive Trade Practices**
**(Ohio Revised Code § 4165.02)**

129.    Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

130.    Defendants' conduct set forth herein constitutes deceptive trade practices in violation of Ohio Revised Code § 4165.02.

131.    Defendants' sale of the Knockoff Tumblerone is likely to confuse consumers as to its source and create the incorrect impression in the minds of consumers that the Knockoff Tumblerone is authorized, sponsored, approved, endorsed or licensed by Ms. Molnarova.

132.    Defendants have disparaged Ms. Molnarova and the Tumblerone, including by publicly stating that her prices were "insane."

133.    Defendants have disparaged Ms. Molnarova and the Tumblerone stating that by publicly stating that her efforts to enforce her intellectual property rights constituted a crime.

134.    Defendants have intentionally misrepresented the names of the purported entities under which they conduct business, including by falsely stating that they were doing business under the name of a corporation that did not exist and has never existed.

135.    Swamp Witches is an Ohio limited liability corporation that was organized only after the events giving rise to this action.

136.    Defendants' deceptive trade practices have caused, and unless and until enjoined by this Court, will continue to cause irreparable injury and other damage to Ms. Molnarova's business and business.

137.     Defendants have made and will continue to make profits and/or gains by their deceptive trade practices to which they are not entitled to in law or equity.

138.     As shown by Defendants' blatant disregard of Ms. Molnarova's intellectual property rights, corporate formalities, notions of decency and propriety, Defendants intend to continue their deceptive trade practices, unless restrained by this Court.

139.     As a direct and proximate result of Defendants' deceptive trade practices, Ms. Molnarova has been damaged and will continue to be damaged, and he has no adequate remedy at law.

140.     As a direct and proximate result of Defendants' deceptive trade practices, Ms. Molnarova is entitled to a recovery of reasonable attorneys' fees and costs incurred herein.

## COUNT V
## Defamation

141.     Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

142.     Defendants' conduct set forth herein constitutes defamation *per se* under Ohio law.

143.     Defendants' conduct set forth herein also constitutes defamation *per quod* under Ohio law.

144.     Defendants have publicly made false and defamatory statements about Ms. Molnarova.

145.     Defendants have falsely and publicly stated that Ms. Molnarova and/or her associates have committed crimes, which constitutes defamation *per se* under Ohio law, but also defamation *per quod.*

146.     Defendants have falsely and publicly stated that that Ms. Molnarova and/or her associates have misrepresented the scope of her intellectual property rights, which constitutes defamation *per se* under Ohio law, but also defamation *per quod.*

147.     Defendants have repeatedly published their false and defamatory statements about Ms. Molnarova to third parties by posting them on his publicly available TikTok and Instagram.

148.     Mr. Moore has 1,348 followers on TikTok.

149.     Defendants knew, or should have known, that the defamatory statements they have made about Ms. Molnarova were false and defamatory.

150.     Defendants' false and defamatory statements about Ms. Molnarova have caused her damages including damage to her business and livelihood, as well as her reputation, as well as having caused Ms. Molnarova shame, mortification, and injury to her emotional wellbeing.

151.     Defendants' false and defamatory statements about Ms. Molnarova have directly and proximately caused her damages, including financial losses resulting from the Ms. Molnarova's impaired reputation, including but not limited to lost profits from her business.

152.     Defendants' false and false and defamatory statements about Ms. Molnarova have directly and proximately caused are continuing to cause ongoing damage to Ms. Molnarova.

153.     As shown by Defendants' blatant disregard of Ms. Molnarova's intellectual property rights, corporate formalities, notions of decency and propriety, Defendants intend to continue defaming Ms. Molnarova, unless restrained by this Court.

## <u>COUNT VI</u>
### Tortious Interference With A Business Relationship

154.     Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

24

155. Defendants' conduct set forth herein constitutes tortious interference with a business relationship under Ohio law.

156. Ms. Molnarova had and continues to have multiple prospective business relationships with customers and other business partners regarding the Tumblerone.

157. Defendants were aware that Ms. Molnarova had a thriving business selling her Tumblerone products via Etsy, as evidenced Defendants' multiple references to Ms. Molnarova in social media posts.

158. Defendants' social media posts included direct criticism of Ms. Molnarova's pricing and accusations that she and/or her associates were engaging in criminal activity.

159. Defendants intentionally interfered with Ms. Molnarova's business relationships and prospective business relationship, and caused customers to purchase the Knockoff Tumblerone from Defendants instead of the Tumblerone from Ms. Molnarova.

160. Defendants conduct caused damages to Ms. Molnarova, including lost sales and lost business partnerships.

161. Defendants' conduct has directly and proximately caused Ms. Molnarova damages, including financial losses resulting from the Defendants' interference with her business relationships, including but not limited to lost profits and lost opportunities for expansion of her business.

162. Defendants' conduct has direly and proximately caused are continuing to cause ongoing damage to Ms. Molnarova.

163. As shown by Defendants' blatant disregard of Ms. Molnarova's intellectual property rights, corporate formalities, notions of decency and propriety, Defendants intend to continue interfering with Ms. Molnarova's business relationships, unless restrained by this Court.

## COUNT VII
### Telecommunications Harassment
### (Ohio Revised Code § 2917.21)

164.    Ms. Molnarova hereby realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

165.    Defendants' conduct set forth herein constitutes telecommunications harassment under Ohio Revised Code § 2917.21.

166.    Defendants knowingly posted multiple text and audio statements on Instagram and TikTok for the purpose of abusing, threatening, or harassing Ms. Molnarova.

167.    Defendants knowingly incited other persons through their multiple social media posts to harass or participate in the harassment of Ms. Molnarova.

168.    Defendants knowingly incited other persons through social media posts, including Defendants' post soliciting names for the Knockoff Tumblerone, to harass or participate in the harassment of a person.

169.    Defendants' telecommunications harassment has caused directly and proximately caused damage to Ms. Molnarova including damage to her business and livelihood, as well as her reputation, as well as having caused Ms. Molnarova shame, mortification, and injury to her emotional wellbeing.

170.    Defendants' telecommunications harassment of Ms. Molnarova has directly and proximately caused and is continuing to cause ongoing damage to Ms. Molnarova.

171.    As shown by Defendants' blatant disregard of Ms. Molnarova's intellectual property rights, corporate formalities, notions of decency and propriety, Defendants intend to continue defaming Ms. Molnarova, unless restrained by this Court.

**REQUEST FOR RELIEF**

**WHEREFORE,** Ms. Molnarova respectfully demands judgment against Defendants as follows:

A.  That Defendants have infringed Ms. Molnarova's copyright in the Tumblerone;

B.  For a preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with Defendants from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the Tumblerone, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control;

C.  For a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, attorneys, and all persons acting in concert and participation with them from infringing upon Ms. Molnarova's copyrights.

D.  For actual damages, punitive damages, and Defendants' profits to be determined at trial, plus interest;

E.  For an award of reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a);

F.  That the Tumblerone Trade Dress has been and continued to be infringed by Defendants in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125;

G.  That Defendants' use of the Tumblerone Trade Dress constitutes federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125;

H.  Restraining and enjoining Defendants, permanently and preliminarily during the

pendency of this action, together with its officers, agents, members, employees, successors and assigns, and all those in privity and/or acting in concert with Defendants, from advertising, promoting, selling, marketing, or distributing any and all of Defendants' goods bearing the Tumblerone Trade Dress or any other trade dress or mark confusingly similar thereto on any and all goods;

I.  Awarding Ms. Molnarova her monetary damages, including actual damages sustained as a result of Defendants' infringement of the Tumblerone Trade Dress and other unlawful conduct as set forth herein, together with an accounting of Defendants' profits, as provided in 15 U.S.C. § 1117, all in amounts to be determined at trial;

J.  Awarding Ms. Molnarova punitive and trebled damages against Defendants for their willful infringement and misconduct in an amount to be determined at trial;

K.  Pursuant to 15 U.S.C. § 1118, ordering that Defendants be required to deliver up for destruction all infringing products, advertising and promotional materials, all packaging materials, and all business documents, including labels, brochures, business stationery, calling cards, information sheets, posters, signs, and any other printed or graphic materials of any type, including the plates, molds or other means of producing the materials, which include or reproduce the Tumblerone Trade Dress or that bear reference to any confusingly similar imitations of the same;

L.  Pursuant to 15 U.S.C. § 1116(a), ordering Defendants to file with the Court and serve on Ms. Molnarova within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

28

M. Finding the case to be exceptional under 15. U.S.C. § 1117(b);

N. That Defendants engaged in deceptive trade practices under Ohio Revised Code § 4165.02;

O. That Defendants defamed Ms. Molnarova under Ohio Law;

P. That Defendants tortuously interfered with Ms. Molnarova's business relationships under Ohio law;

Q. That Defendants engaged in Telecommunications Harassment under Ohio Revised Code § 2917.21;

R. Awarding Plaintiff her costs and reasonable attorney's fees and expert witness fees in this action; and

S. Granting Plaintiff all such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38, Defendants respectfully demand a trial by jury as to all issues in this action so triable.

Dated: July 6, 2023                  Respectfully submitted,

*/Govinda M. Davis/*
Govinda M. Davis (Ohio Bar No. 96411)
Joseph J. Beglane * (*Pro Hac Vice Motion Forthcoming*)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
Voice: (513) 977-8200
Facsimile: (513) 977-8141
*Attorneys for Plaintiff*