**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANA MOLNAROVA,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:23-cv-2157** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **SWAMP WITCHES INC. LLC, SWAMP** | : | **Magistrate Judge Elizabeth P. Deavers** |
| **WITCHES INC., and MICHAEL MOORE** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION AND ORDER**</u>

This matter comes before this Court on Defendants Swamp Witches Inc. LLC ("SWI LLC"), Swamp Witches Inc. ("SWI"), and Michael Moore's (collectively, "Defendants") Motion to Dismiss ("Motion"). (ECF No. 14). For the reasons set forth below, the Court **DENIES IN PART** and **GRANTS IN PART** the Motion: The Motion is **DENIED** as to Defendants SW and SWI and **GRANTED** as to Counts I through VII of Plaintiff's Complaint. The Court *sua sponte* **GRANTS** Plaintiff leave to amend.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff Jane Molnarova ("Plaintiff") is a citizen and resident of Slovakia and the creator of "Tumblerone," a product that "permits a user to decorate . . . a tumbler or cup without physically touching the tumbler or cup." (*Id.* ¶ 25). A spinner device of sorts, the Tumblerone consists of three detachable components: (1) a tilted base; (2) a spinning platform; and (3) a holder that has

---

[1] Unless otherwise noted, the following facts are taken from Plaintiff's Complaint (ECF No. 1) and assumed to be true for purposes of resolving the Motion.

four curved fins to secure the inside of the tumbler or cup.  (*Id.* ¶¶ 26, 32).  Using a 3D printer, Ms. Molnarova manufactures the product and then ships it directly to customers.  (*Id.* ¶¶ 28–29). Since at least July 2022, she has operated a digital store on Etsy, "CrystalyneShop," through which she markets and sells Tumblerone.  (*Id.* ¶ 24).

In or around April 2023, Plaintiff became aware that Defendants were marketing and selling "a virtually identical replication of the Tumblerone," dubbed the "Manual Tumbler Turner," on various social media accounts including TikTok and Instagram, as well as on Defendants' website (https://swampwitchesinc.com).  (*Id.* ¶¶ 36–37).  She further learned that Defendants had been, from as early as March 2023, marketing the Manual Tumbler Turner while explicitly acknowledging that there was "someone else out there selling it" in reference to Plaintiff and noting that she was "the only one that had it."  (*Id*. ¶ 40).  Defendants' social media posts spurned the asking price for the Tumblerone, stating that Plaintiff "wanted so much for it, it was insane." (*Id.* ¶ 41).

Several social media users picked up on the similarities between the parties' products. They left comments on Defendants' posts to that effect, expressing their "aware[ness] that the Tumblerone originated with Plaintiff." (*Id.* ¶ 50).  In response to some of those comments, Defendants acknowledged that their product was "inspired by" and "designed with the inspiration of" a product already on the market but insisted that it was an "affordable" alternative.  (*See id.* ¶¶ 46, 48).

Desperate to protect her product, Plaintiff took action: she sent a cease-and-desist letter directly to Defendants and separately sent a note requesting that an online sales platform on which Defendants were selling their products, Shopify, take down their posts. (*See id.* ¶¶ 44, 49).  As a result, Defendants posted two videos on TikTok April 6, 2023, the first of which stated that "if you

misrepresent yourself as legal, that's a crime, buddy. Bye. Get a better legal team, Jana, Jana, Jan."

(*See id.* ¶ 53).  In the second video that day, Defendants accused Plaintiff of "misrepresenting [her]

copyright," stating that "that's a problem," while also "sarcastically acting as if he had accidentally

left the Knockoff Tumblerone in view of the camera." (*See id.* ¶ 55).   The next day, Defendants

posted another video, exclaiming that their product "seems to have gotten a little bit of attention"

and imploring their followers to "get petty," stating "we bitchy" while "sarcastically" mocking

Plaintiff's attempts to halt Defendants' promotion and sale of their product.   (*See id*. ¶ 56).

Defendants had also apparently "solicited a name for [their product] to encourage intimidating and

misogynistic abuse" against Plaintiff by Defendants' social media followers.  (*See id*. ¶ 56).  One

commenter heeded that invitation and "mockingly suggested 'Jana Banana Fanna Fonana Fee-fi

fo Jana' as a name for the product, while another "mockingly suggested 'Witch, Bitch not Jana'

and 'Bedazzled Bitch Witch'" as other potential names.  (*See id*. ¶¶ 58, 59).

On May 2, 2023, an attorney "on behalf of Swamp Witches, Inc. (pending incorporation)"

sent Plaintiff a cease-and-desist letter via email. (*See id.* ¶ 66).  The letter stated, in relevant part:

> We believe you are violating 17 U.S.C. § 512(f) by falsely claiming
> ownership of copyright rights that you do not own. You are
> engaging in deceptive trade practices by filing a false DMCA claim
> with Shopify® and asserting rights you do not own. This has been
> causing consumers to believe that the shop they are purchasing
> goods from is infringing upon someone's copyright rights because
> the listings of the goods they have purchased get removed. Further,
> the removal of the listings of already purchased goods results in
> consumers not being able to view the goods they already paid for.
> You are fraudulently misrepresenting to the public that you own the
> intellectual property rights to the design of "TUMBLERONE ©
> 2022 IP" (hereafter, "TUMBLERONE").

(*See* ECF No. 1-11).  A series of takedown notices, and counter-notices, with Shopify ensued.  (*See*

ECF No. 1 ¶¶ 71–78).   During and since that time, Plaintiff had been unable to verify that

Defendants SWI LLC and SWI existed as legal corporate entities in Ohio.  (*See id.* ¶¶ 80–82).

**B.  Procedural History**

On July 6, 2023, Plaintiff initiated this action.  (ECF No. 1).  On October 17, 2023, Defendants filed their Motion to Dismiss.  (ECF No. 14).  Plaintiff has opposed, (ECF No. 17), and Defendants have replied, (ECF No. 19).  The Motion is now ripe for resolution.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).   To survive dismissal under Rule 12(b)(6), factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level"; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In reviewing a motion to dismiss, this Court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although this Court's review is generally limited to the contents of the complaint, it may also consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

4

### III.    LAW & ANALYSIS

The Motion argues that Defendants SWI LLC and SWI should be dismissed because those entities do not legally exist. (*Id.* at 9). They also assert that the various counts asserted against them—(1) federal copyright infringement, (2) federal trade dress infringement, (3) federal unfair competition, (4) deceptive trade practices under Ohio law, (5) defamation under Ohio law, (6) tortious interference with a business relationship under Ohio law, and (7) telecommunications harassment under Ohio law—fail to state a claim as a matter of law. Plaintiff argues that the Complaint is adequately pleaded as filed, but in the alternative, requests leave to amend her Complaint. (*See* ECF No. 17, at 17–18). This Court first addresses Defendants' improper party argument before turning to the sufficiency of Plaintiffs' claims.

### A.  Dismissal of Defendants SWI LLC and SWI

This Court begins with Defendants' argument that SWI LLC and SWI should be dismissed. According to Defendants, SWI LLC is not a viable party to this litigation because the corporation was cancelled by the Ohio Secretary of State approximately two weeks after this action was filed. (*See* ECF No. 14, at 9). They argue that SW, on the other hand, is not a proper party because it never existed as a corporate entity. (*Id.*). Plaintiff concedes that "such business entities do not exist," (ECF No. 17 at 17) but argues against their dismissal. Neither party adequately briefs their respective positions on this issue, nor points the Court to any applicable legal authority. Nonetheless, for the reasons explained below, this Court declines to dismiss Defendants SW and SWI at this juncture.

A corporation's capacity to sue or be sued is governed by the law under which it was organized or generally, for all other parties, by the law of the state where the court is located. *See* Fed. R. Civ. P. 17(b)(2)–(3). As to SW, even if the entity never existed as a corporation, an action

5

may still be "maintained against the user of a trade name or fictitious name," whether or not the name has been registered or reported with the Ohio Secretary of State. *See* Ohio Rev. Code § 1329.10(C).

SWI LLC's capacity to be sued, on the other hand, is governed by Ohio Rev. Code § 1701.88. Under the statute, "[t]he cancellation of [an entity's] corporate charter by the Ohio Secretary of State . . . do[es] not prevent a plaintiff with a valid cause of action against [it] from proceeding." *See Bob's Beverage, Inc. v. ACME, Inc.*, 169 F. Supp. 2d 695, 719 (N.D. Ohio 1999), *aff'd*, 264 F.3d 692 (6th Cir. 2001). As courts in Ohio and the Sixth Circuit have explained, the statute "extend[s] the vitality of a dissolved corporation for purposes of suit," is "remedial in nature," and "should be given a liberal construction." *Id*. (citation and internal quotation marks omitted). This, however, "does not mean . . . that a corporation remains vulnerable to unlimited litigation following its dissolution." *See Land O'Lakes, Inc. v. Nationwide Tanks, Inc.*, 2006-Ohio-4327, ¶ 38, 2006 WL 2390455, at *6 (Ohio Ct. App. 2006). Rather, the statute operates "to restrict post-dissolution litigation to those causes of action which accrued prior to the entity's termination or would have accrued as a result of corporate actions executed prior to dissolution." *Id.*

Because Defendants do not dispute that Plaintiff's claims accrued prior to the dissolution of SWI LLC, or otherwise argue that Ohio Rev. Code § 1329.10(C) does not apply, Plaintiff is not prevented from prosecuting her claims against Defendants.

Accordingly, the Court **DENIES** the motion to dismiss Defendants SWI LLC and SWI without prejudice.

**B.  Dismissal of Plaintiff's Claims under Rule 12(b)(6)**

*1.  Copyright Infringement*

In the Complaint, Plaintiff asserts a claim for infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*., and the Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886 (Paris Text 1971), S. Treaty Doc. No. 99-27 (Berne Convention).  The Berne Convention "provides that works copyrighted in signatory foreign countries and written by nationals of those countries or the United States are to be given copyright protection under United States law if first published in a nation adhering to the convention." *See Itar-Tass Russian News Agency v. Russian Kurier*, Inc., 886 F. Supp. 1120, 1125 (S.D.N.Y. 1995).

Relying on the Berne Convention, to which Slovakia is a signatory (ECF No. 1 ¶ 30), Plaintiff asserts that the Tumblerone is a "wholly original work that is copyrightable under the laws of Slovakia," (ECF No. 1 ¶ 93), and that she is "the owner of a copyright in the Tumblerone, because she created the Tumblerone in Slovakia, is a Slovak national, and first published the Tumblerone from Slovakia." (ECF No. 1, ¶ 29).  Accordingly, she contends that the Tumblerone is entitled to copyright protection under the Copyright Act of 1976, even if her work is not registered in the United States.  (ECF No. 17, at 1).

Defendants argue that Plaintiff's copyright claim should be dismissed because the Tumblerone was first published in the United States when Plaintiff started selling the Tumblerone on July 15, 2022.  (*See* ECF No. 14, at 6).  Citing the provision of the Copyright Act that governs such "United States works," Defendants urge that registration with the U.S. Copyright Office is required before bringing this infringement action. (*See id.* (citing 17 U.S.C. § 411(a))).

Regardless of whether the work arises out of the Berne Convention, to assert a copyright infringement claim in United States courts, a plaintiff must show: "(1) ownership of a valid

copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). As to the first element, "[a] valid copyright extends only to copyrightable subject matter." *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 408 (2017) (citation omitted).[2] The Act protects Berne Convention works only to the extent that those works constitute "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Thus, regardless of when and where the Tumblerone was published, Plaintiff needed to allege that the Tumblerone is protectable as an "original work[] of authorship" under the Copyright Act. *Id.*; *see* 17 U.S.C. § 104 (providing that the Copyright Act extends Berne Convention protections only to works "specified by section[] 102").

Plaintiff does not sufficiently allege how her work is protectable under Section 102 of the Act. The only statutorily delineated "original work[]" category that would apply here is "pictorial, graphic, and sculptural works,"[3] 17 U.S.C.A. § 102(a)(5), which the statute defines to include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans," *id.* § 101. Plaintiff's allegations fail to identify how her work—or what feature of her work—falls within the "pictorial, graphic, and sculptural works" category.

---

[2] The "ownership" prong of a copyright infringement claim also factors into the standing test of 17 U.S.C. § 501(b), "which accords standing only to the legal or beneficial owner of an 'exclusive right.'" *Itar-Tass*, 153 F.3d at 91. *See Hutson v. Notorious B.I.G.*, LLC, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (plaintiff must be "the legal or beneficial owner of an exclusive right under a valid copyright at the time of the alleged infringement" to have standing to sue).

[3] The Copyright Act also identifies other categories as protectable. Those include literary works; musical works; dramatic works, pantomimes and choreographic works; motion pictures and other audiovisual works; sound recordings; and architectural works. *See* 17 U.S.C.A. § 102(a)(1)–(4), (6)–(8). It does not appear that the Tumblerone would fall under any of those categories and, in any event, Plaintiff has not alleged that it does.

Crucially, while copyrightable features in that category can "include works of artistic craftsmanship," they do so only "insofar as their form *but not* their mechanical or utilitarian aspects are concerned." *Id*. (emphasis added). Recognized as the "separability" limitation, where an original work is incorporated into a "useful article," i.e., "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," protection under the Copyright Act applies "only if, and only to the extent that, [their] design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id*. For that reason, courts reviewing a copyright claim assess both "'the originality *and* non-functionality of the work' to ensure that it is a protectable expression rather than an unprotectable idea." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 628 (6th Cir. 2020) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (emphasis added)).

Plaintiff has not sufficiently shown that any aspect of the Tumblerone is non-functional as to enjoy Copyright Act protections. Although she is correct in asserting that Slovakia law applies to the question whether she owns a copyright in the Tumblerone, the question of *who* owns a copyright is distinct from *what* protection that copyright provides. The latter is governed by United States law, more specifically the Copyright Act. In other words, even if Slovakia offers copyright protections to the Tumblerone as alleged by Plaintiff, she must still show that the Tumblerone is protectable under United States copyright law. *See Sadhu Singh Hamdad Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007) ("[T]he law that determines the extent of what is subject to copyright protection is the copyright law of the country in which the infringement occurred, not that of the country in which the work was first published."); *Bridgeman Art Library, Ltd. v. Corel Corp.*, 36 F.Supp.2d 191, 195 (S.D.N.Y.1999)

(Copyright Act is the exclusive source of protection for foreign works under the Berne Convention); *Saregama India Ltd. v. Young*, No. CV 02 9856 RJK, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("Under the Berne Convention, an author who is a national of a signatory country, or one who first publishes his work in any such country, is *entitled to the same copyright protection in another signatory country as that latter country accords to its own nationals*." (emphasis in original)).

Accordingly, whether Slovakia copyright law contemplates the separability limitation imposed by 17 U.S.C. § 101 is irrelevant. The separability limitation still applies to an action arising under the Berne Convention. To hold otherwise would create a loophole in United States copyright law by affording greater protections to foreign works than domestic ones. In its enactment of the Copyright Act, Congress disavowed creating such a loophole by expressly instructing that "[a]ny rights in a work eligible for protection under this title that derive from this title, other Federal or State statutes, or the common law, shall not be expanded or reduced by virtue of, or in reliance upon, the provisions of the Berne Convention, or the adherence of the United States thereto." *See* 17 U.S.C. § 104(c); *Charles Garnier, Paris v. Andin Int'l, Inc.*, 36 F.3d 1214, 1226 (1st Cir. 1994) ("Congress did not intend to adopt the Berne Convention wholesale; the amended statute itself makes it clear that the United States Copyright Act, and not the Berne Convention, controls disputes arising under the copyright laws."); *Edison Bros. Stores v. Broad. Music, Inc.,* 954 F.2d 1419, 1426 (8th Cir. 1992) ("Congress was emphatic that the United States' participation in the Berne Convention should not give rise to an expanded claim of copyright protection."); *Mahon v. Mainsail LLC*, No. 20-CV-01523-YGR, 2020 WL 4569597, at *7 (N.D. Cal. Aug. 7, 2020) ("[T]he Berne Convention is not self-executing and does not confer an independent cause of action.").

Viewing the allegations in a light most favorable to Plaintiff, as this Court must at this stage, nothing in the Complaint suggests that the Tumblerone design is a protectable work separable from the tumbler decorating function of the product.  The facts alleged only suggest a utilitarian purpose of the Tumblerone. (*See e.g.*, ECF No. 1, ¶¶ 26 – 27 (describing the Tumblerone as "a product that permits a user to decorate, or "bling," a tumbler or cup without physically touching the tumbler or cup after it is prepared by the user" that "consists of three detachable components including (1) a tilted base, (2) a spinning platform, and (3) a tumbler holder").  Any artistic design of the Tumblerone, moreover, would be protectable only to the extent that it is "separable" from the useful article (i.e., the tumbler decorator) in which the design is incorporated. While Plaintiff's Trade Dress claim, discussed further below, hints at an arguably artistic purpose, those allegations, even when describing the "aesthetically pleasing" components of the Tumblerone, fail to separate those features from the utilitarian function of the product.  (*See* ECF No. 1 ¶ 32 (describing the "distinctive tumbler holder portion" as "consist[ing] of four aesthetically pleasing and curved fins that secure the inside of a tumbler to the Tumblerone") (emphasis added))).[4]

In short, neither the Complaint in its present form nor Plaintiff's opposition to the Motion to Dismiss plausibly explains how the features of the Tumblerone are inherently non-functional as

---

[4] That Plaintiff may have developed the particular "curved fins" design for aesthetic reasons does not make the entire Tumblerone copyrightable. *See Varsity Brands,* 799 F.3d 468, 480–81; *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-CV-849-J-34PDB, 2019 WL 1304290, at *21– 22 (M.D. Fla. Mar. 21, 2019) ("While Lanard may have developed this particular design for aesthetic and imaginative reasons, this fact alone does not make the entire useful article copyrightable." (internal quotation marks and citation omitted)), *aff'd sub nom. Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020); *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 923 n.9 (11th Cir. 1983) ("'[E]ven if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable.'" (quoting H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 55, reprinted in 1976 U.S. Code Cong. & Admin. News 5667, 5668)).

to warrant protection under the Copyright Act.[5] Slovakia may recognize Plaintiff's copyright ownership, but the allegations fail to identify what, if any, feature of the Tumblerone is would be protected under United States copyright law. Plaintiff has thus failed to allege plausibly a valid copyright in the Tumblerone and her copyright claim must therefore fail.

Because Plaintiff cannot establish that she owns a valid copyright, the Court need not address whether Defendants "copied protectable elements of the work." *See Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 476 (6th Cir. 2015) (quoting *Lexmark*, 387 F.3d at 534), *aff'd sub nom. Star Athletica,* 580 U.S. 405; *Treadway Gallery, Inc. v. John Toomey Gallery, Inc.*, No. 1:19-CV-00664, 2022 WL 952190, at *12 n.9 (S.D. Ohio Mar. 30, 2022).

Accordingly, Count I is DISMISSED without prejudice.

### 2. Trademark Infringement and Unfair Competition under the Lanham Act

Plaintiff's claims for infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), likewise fail and for similar reasons. Both claims are based upon Defendants' alleged infringement of the "Tumblerone Trade Dress."[6] (*See* ECF No. 1 ¶¶

---

[5] Nor does the Complaint appear to seek protection for *only* artistic surface features as applied to the utilitarian object; Plaintiff seeks to protect the entirety of the tumbler decorator. As "unique and attractively shaped" as the Tumblerone may be, however, the Copyright Act does not protect its shape and form. *See Star Athletica*, 580 U.S. at 416–17; *id.* at 419 ("To be clear, the only feature of the [product] eligible for a copyright in this case is the two-dimensional work of art fixed in the tangible medium of the [product's] fabric . . . [R]espondents have no right to prohibit any person from manufacturing a [product] of identical shape, cut, and dimensions to the ones on which the decorations in this case appear."); *id*. at 424 ("[O]ur test does not render the shape, cut, and physical dimensions of the cheerleading uniforms eligible for copyright protection."); *see also id*. at 443 (Breyer, J., dissenting) ("A separable design feature must be 'capable of existing independently' of the useful article as a separate artistic work that is not itself the useful article."); *Lanard Toys*, 2019 WL 1304290, at *22.

[6] A "trade dress" is not explicitly defined in the Lanham Act. *See Gibson Guitar Corp. v. Paul Reed Smith Guitars*, LP, 423 F.3d 539, 547 (6th Cir. 2005). Nonetheless, the Sixth Circuit has explained that trade dress "refers to the image and overall appearance of a product"; it "embodies that arrangement of identifying characteristics or decorations connected with a product, whether

103–104, 122).  Plaintiff asserts she owns the "distinctive trade dress that adorns the Tumblerone," which consists, *inter alia*, of "the distinctive tumbler holder portion of the Tumblerone, which consists of four aesthetically pleasing and curved fins that secure the inside of a tumbler to the Tumblerone." (*See* ECF No. 1, ¶ 32).  Defendants argue that the claims warrant dismissal because Plaintiff has not sufficiently alleged non-functionality of the Tumblerone or its features. (ECF No. 14, at 7).  Plaintiff responds that her allegations describe the trade dress "as a combination of product features (including the fins)" and is thus protectable as "product design." (ECF No. 17, at 14).  Because Plaintiff has not established a plausible claim for trade dress in the Tumblerone, both her infringement and unfair competition claims fail.

Whether the Complaint plausibly states a trade dress claim "turns on whether it has alleged facts establishing that its asserted trade dresses are nonfunctional." *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 515 (6th Cir. 2023).  The determination of functionality is generally "a question of fact." *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, 933 F.Supp.2d 974, 1012 (S.D. Ohio 2013) (quoting *Market Masters, Inc. v. Clinician's Choice Dental Products, Inc.*, 99 Fed. Appx. 677, 681 (6th Cir.2004)).  Nonetheless, Plaintiff bears the "burden of pleading . . . nonfunctionality" and must do so with factual particularity. *See Bliss*, 82 F.4th at 514; *see also Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 746–47 (E.D. Mich. 2014) ("[T]he failure to plead non-functionality with factual particularity establishes merely the possibility and not the plausibility of [relief] and is therefore fatal to Plaintiff's trade dress claim." (citation and internal quotation marks omitted)).

---

by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." *Bliss Collection, LLC v. Latham Companies*, LLC, 82 F.4th 499, 514 (6th Cir. 2023) (internal quotation marks and citation omitted)).

To survive dismissal, then, a plaintiff must allege sufficient factual material to "draw the reasonable inference" that the Tumblerone is nonfunctional. *Iqbal*, 556 U.S. at 678; *see Gen. Motors Corp. v. Lanard Toys, Inc*., 468 F.3d 405, 416–17 (6th Cir. 2006) (finding that the district court erred when it treated the element of functionality as a defense because it improperly shifted the burden onto the defendant). There are two ways in which a design can be deemed functional and therefore not sufficiently distinctive to warrant protection under the Lanham Act. The first— "traditional functionality"—considers whether a product's design feature is "essential to the use or purpose of the article" or if the design feature itself "'affects the cost or quality of the article.'" *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159, 165 (1995)); *see also Inwood Labs., Inc. v. Ives Labs., Inc*., 456 U.S. 844, 851 n. 10 (1982). The second—"aesthetic functionality"—considers whether the feature, if exclusively used, "would put competitors at a significant non-reputation-related disadvantage." *See TrafFix*, 532 U.S. at 32–33; *Leapers, Inc. v. SMTS, LLC*, 879 F.3d 731, 737 (6th Cir. 2018). Aesthetic intent, "that the product was designed for an aesthetic purpose," may help demonstrate non-functionality, but it is not conclusive. *Leapers,* 879 F.3d at 736. As the Sixth Circuit explained, "not every design created for an aesthetic purpose will turn out to be nonfunctional." *Id.*

In *Bliss*, the Sixth Circuit affirmed the district court's dismissal of a trade dress claim where the plaintiff asserted that its trade dresses arose, in part, from the manufacturer's aesthetic choices but failed to articulate how the asserted trade dresses were nonfunctional. 82 F.4th at 515. As the court explained, a trade dress is not deemed nonfunctional simply because it consists of "artistic features resulting from artistic choices"; such allegations are "insufficient to satisfy the applicable standards for assessing functionality." *See id.*

14

The facts, as alleged here, fail to establish non-functionality in either the traditional or aesthetic sense to entitle the Tumblerone to trade dress protection. As explained in Part III(B)(1) above, the factual allegations describing the Tumblerone's allegedly protectable features expressly tie those features to a utilitarian function. (*See* ECF No. 1 ¶ 32 (describing the Tumblerone as consisting of "aesthetically pleasing curved fins" that serve to "secure the inside of a tumbler to the Tumblerone")). Plaintiff only alleges, in conclusory fashion, that the Tumblerone trade dress is "non-functional, as its features are not dictated by the function of the Tumblerone, namely, 'blinging' or decorating tumblers or cups." (ECF No. 1 ¶ 104). Such allegations, however, are insufficient to survive a Rule 12(b) motion. *See e.g.*, *DO Denim, LLC v. Fried Denim*, Inc., 634 F.Supp.2d 403, 408 (S.D.N.Y.2009) (dismissing the plaintiff's trade dress infringement claim because the plaintiff's complaint did not plead with specificity the non-functional aspects of the plaintiff's product design).

Because the Complaint alleges no facts from which this Court can draw a "reasonable inference" that the Tumblerone's features are non-functional, Plaintiff's trade dress infringement claim and related federal unfair competition claim fail to state a claim upon which relief can be granted.

Accordingly, Counts II and III are DISMISSED without prejudice.

### 3. *Ohio DTPA*

The Complaint also charges Defendants with deceptive trade practices in violation of Ohio Revised Code § 4165.02. Although Plaintiff does not specify which provision of the Ohio Deceptive Trade Practice Act (DTPA) applies, the allegations appear to invoke the provisions prohibiting conduct that "[c]auses likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," Ohio Rev. Code § 4165.02(A)(2),

"lists a fictitious business name in a local telephone directory," *id*. § 4165.02(A)(5), "[l]ists a fictitious business name in a directory assistance database," *id*. § 4165.02(A)(6), and "[d]isparages the goods, services, or business of another by false representation of fact," *id*. § 4165.02(A)(10). Plaintiff cites several ways in which Defendants engaged in unfair competition under those provisions. None of these practices, however, constitutes unfair competition.

      *a.*    *Likelihood of Confusion under Ohio Rev. Code § 4165.02(A)(2)*

According to Plaintiff, Defendants' "sale" of their product is "likely to confuse consumers as to its source and create the incorrect impression in the minds of consumers that the [product] is authorized, sponsored, approved, endorsed or licensed by Ms. Molnarova." (*See* ECF No. 1 ¶ 131). To establish a deceptive practice claim under Ohio Rev. Code § 4165.02(A)(2), a plaintiff must show that the defendant "create[d] a likelihood of customer confusion about 'the source, sponsorship, approval, or certification of goods or services.'" *Wooster Floral & Gifts, L.L.C. v. Green Thumb Floral & Garden Ctr., Inc.*, 164 Ohio St.3d 57, 2020-Ohio-5614, at ¶ 2, 172 N.E.3d 60, 61 (Ohio 2020) (quoting Ohio Rev. Code § 4165.02(A)(2)); *Slave Legacy, LLC v. Son of Slave*, No. 3:23-CV-152, 2023 WL 3919317, at *5 (S.D. Ohio June 9, 2023). This requires a showing that the ordinary consumer will be misled or deceived by the similarity between the products at issue. *Leventhal & Assoc., Inc. v. Thomson Cent. Ohio*, 128 Ohio App. 3d 188, 197, 714 N.E.2d 418, 424 (Ohio Ct. App. 1998).

Plaintiff fails to allege plausibly that Defendants' conduct causes a likelihood of confusion to be actionable under § 4165.02(A)(2). For one, she does not contend that Defendants sold their products under the Tumblerone name. On the contrary, Plaintiff's allegations make clear that Defendants have distinguished their product from the Tumblerone and identified Plaintiff as a competitor. In one video, Defendants respond to a comment that their product was copied from

16

Plaintiff and state that they were "selling an affordable tumbler turner" that was "designed with the inspiration of one that was on the market." (ECF No. 1 ¶ 48). Accordingly, any reasonable consumer viewing Defendants' social media content would conclude that Defendants—not Plaintiff—are providing the tumbler decorator sold by Defendants.

Defendants' express disapproval of Plaintiff's prices, as alleged by Plaintiff, further mitigates any likelihood that customers would assume that Defendants' products are sponsored, approved, or certified by Plaintiff such that any reasonable consumer would be likely to suffer any confusion. Quite the opposite, Plaintiff alleges that several customers have directly notified her of a similar—albeit lower-priced—product is on the market. As the Supreme Court advised, and the Sixth Circuit reiterated, "there is no prohibition against copying goods and products." *TrafFix*, 532 U.S. at 2; *Antioch Co. v. W. Trimming Corp.*, 347 F.3d 150, 160 (6th Cir. 2003) (noting that "copying is not always discouraged or disfavored"; copying "preserves competition, which keeps downward pressure on prices and encourages innovation").

Because Plaintiff fails to plead sufficiently a likelihood of confusion, her claims under Ohio Rev. Code §§ 4165.02(A)(2)–(3) fail as a matter of law. *See Wooster*, 164 Ohio St. 3d at 61–62, 172 N.E.3d at 64–65 (plaintiff failed to establish a deceptive trade claim where "[a]ny reasonable internet user looking at the website can tell that it is Green Thumb that is providing the goods and that there is no indication of sponsorship, approval, or certification of goods by another entity").

        *b.    Fictitious business names under Ohio Rev. Code §§ 4165.02(A)(5), (6)*

Plaintiff also claims that "Defendants have intentionally misrepresented the names of the purported entities under which [Defendants] conduct business, including by falsely stating that they were doing business under the name of a corporation that did not exist and has never existed." (*See* ECF No. ¶ 135). The text of the applicable provisions regarding fictitious names, however,

only applies to fictitious names published "in a local telephone directory," Ohio Rev. Code § 4165.02(A)(5), or "in a directory assistance database," *id*. § 4165.02(A)(6). Plaintiff does not allege any such publication.

Accordingly, to the extent that Plaintiff seeks to invoke Ohio Rev. Code § 4165.02(A)(5) or § 4165.02(A)(6) of the Ohio Deceptive Trade Practice Act, those claims fail as a matter of law.

### c. *Product Disparagement under Ohio Rev. Code § 4165.02(A)(10)*

Next, Plaintiff alleges that "Defendants have disparaged Ms. Molnarova and the Tumblerone, including by publicly stating that her prices were 'insane'" and "publicly stating that her efforts to enforce her intellectual property rights constituted a crime." (*See* ECF No. 1 ¶¶ 132-133). To prevail on her product disparagement claim, Plaintiff "must show that the defendant made a false representation of fact." *Northeast Ohio Coll. of Massotherapy v. Burek*, 144 Ohio App.3d 196, 205, 759 N.E.2d 869 (Ohio Ct. App. 2001). Such statements contrast with otherwise "protected statement[s] of opinion." *Id*. In deciding whether a statement is a protected opinion or an actionable factual assertion, a court focuses on four issues: "(1) the specific language used in the assertion, (2) whether the statement is verifiable, (3) the general context of the statement, and (4) the broader context in which the statement appears." *Id*. at 206, 759 N.E.2d 869 (citing *Scott v. News–Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (Ohio 1986)).

Defendants' statement that the Tumblerone's prices are "insane" is an unverifiable statement of opinion and thus not actionable. As to Defendants' statements in the May 2023 cease and desist letter, those statements do not disparage Plaintiff's "goods, services, or business" as much as they "attack [her] legal posture." *See White Mule Co. v. ATC Leasing Co. LLC*, 540 F. Supp. 2d 869, 894–95 (N.D. Ohio 2008) (finding that a "cease and desist letter—and related threats to file suit—do not meet the requirements outlined in *Burek*"). *See also Fairfield Mach. Co., Inc.*

*v. Aetna Casualty and Surety Co.*, 2001 WL 1665624, *6 (Ohio Ct. App. 2001) (explaining that commercial disparagement claims are limited to statements that directly target goods or services); *Blue Cross & Blue Shield of Ohio v. Schmidt*, 1996 WL 71006, *3 (Ohio Ct. App. 1996) (distinguishing between statements disparaging plaintiff's integrity and statements disparaging plaintiff's quality of services).

This Court does not find that those statements set forth a plausible claim under the product disparagement provision of the Ohio DTPA.

Accordingly, Count IV is DISMISSED without prejudice.

### 4. *Defamation Claim*

Plaintiff alleges that Defendants' social media posts constitute defamation under Ohio law. (ECF No. 1 ¶¶ 145–46). To establish a defamation claim under Ohio law, Plaintiff must show: (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement. *Am. Chem. Soc'y v. Leadscope, Inc.*, 133 Ohio St.3d 366, 389, 978 N.E.2d 832, 852 (Ohio 2012). "'[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not.'" *Am. Chem. Soc'y*, 133 Ohio St.3d at 389, 978 N.E.2d at 853 (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666, 669 (Ohio 1983)). In evaluating if a statement is defamatory as a matter of law, a court reviews "the totality of the circumstances" and reads the statement "in the context of the entire publication to determine whether a reasonable reader would interpret it as defamatory." *Id.* (internal quotation marks and alterations omitted).

Plaintiff challenges three statements as defamatory (*see* ECF No. 1, ¶¶ 53, 55, 70):

19

53. In the first of Mr. Moore's April 6, 2023 TikTok videos, Mr. Moore threatened that "if you misrepresent yourself as legal, that's a crime, buddy. Bye. Get a better legal team, Jana, Jana, Jan," thereby publicly and falsely accusing Ms. Molnarova, and/or her associate, of having committed a crime.

[. . .]

55. In the second of Mr. Moore's April 6, 2023 TikTok videos, Mr. Moore threateningly refers to "17 U.S.C. 512(f)" of the Copyright Act falsely and publicly implying that Ms. Molnarova and/or her associate had violated the Copyright Act by "misrepresenting [her] copyright" and stating that "that's a problem," while also sarcastically acting as if he had accidentally left the Knockoff Tumblerone in view of the camera.

[. . .]

70. In Defendants' May 2, 2023 cease and desist letter, Ms. Masis falsely accused Ms. Molnarova of various misdeeds, including violating 17 U.S.C. § 512(f), engaging in deceptive trade practices, false light, fraudulently misrepresenting to the public that Ms. Molnarova owns intellectual property rights in the Tumblerone, engaging in tortious interference with a contract, and defaming Defendants.

The Court finds that the first two statements are not actionable because they are not statements of fact. Much like the DTPA claim, to support a defamation claim, the challenged statement cannot be one of opinion. *See Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St.3d 279, 281–82, 649 N.E.2d 182 (Ohio 1995); *Brown v. Lawson*, 2006-Ohio-5897, ¶ 15, 863 N.E.2d 215, 220 (Ohio Ct. App. 2006); *Brown*, 169 Ohio App.3d at ¶ 15, 863 N.E.2d 215 ("The Ohio Constitution protects statements of opinion."); *see also Wampler v. Higgins*, 93 Ohio St.3d 111, 121–22, 752 N.E.2d 962 (Ohio 2001) (declining to limit Ohio's categorical protection for opinions to opinions expressed in the press). The test governing whether a statement expresses fact or opinion considers the same four factors that guide the Plaintiff's DTPA product disparagement claim: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and

20

(4) the broader social context in which the statement is made.  *See infra* Part III(B)(3)(c); *Scott*, 25 Ohio St.3d at 250.

Though a close call, the Court finds that, under the totality of the circumstances, Defendants' statement that "if you misrepresent yourself as legal, that's a crime" is non-actionable. First, it is presented in hypothetical terms and the context of future action, and therefore inherently unverifiable. *See SPX Corp.*, 253 F.Supp.2d at 980–81 ("A statement is deemed verifiable if: (1) the author represents that he has knowledge of evidence that substantiates the statements and (2) there is a plausible method to verify the statements.").  Second, the tenor of the posts is inconsistent with the kind of objectivity usually associated with statement of facts.  Defendants nickname Plaintiff "buddy" and mockingly use variations of her name "Jana, Jana, Jan." Their statement that Plaintiff's alleged copyright misrepresentation is "a problem, while also sarcastically acting as if he had accidentally left the [Defendants' product] in view of the camera" likewise colors the statement as more subjective than factual.  A fair reading of the Complaint suggests that any listeners or viewers of Defendants' social media content would characterize Defendants' statements, in this context, as opinion, hyperbole, or even puffery.  Finally, the medium in which the statements appear also weigh against a finding of defamation.  TikTok is an open and uncontrolled forum and is akin to venues that, like forum and commentary newspaper sections, are often associated with "cajoling, invective, and hyperbole." *Scott*, 25 Ohio St.3d at 253, 496 N.E.2d 699; *Vail*, 72 Ohio St.3d at 282, 649 N.E.2d 182; *Wampler*, 93 Ohio St.3d at 131, 752 N.E.2d 962. In sum, a reasonable reader or viewer would interpret Defendants' social media statements as Mr. Moore's subjective characterizations, and not as reliable facts.

The cease-and-desist letter is likewise not actionable.  Setting aside the question whether the letter contains statements of fact, Plaintiff does not allege that the contents of the letter were

"published," or communicated to a third party, as required to support a plausible defamation claim. *See Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1090 (S.D. Ohio 2021); *Green v. Mason*, 504 F.Supp.3d 813, 834 (S.D. Ohio 2020) (finding that a letter that was sent only to the plaintiff was not "published" for purposes of a defamation claim); *Rosado-Rodriquez v. Nemenz Lincoln Knolls Mkt.*, 2020-Ohio-4814, ¶ 25, 159 N.E.3d 1214, 1222 (Ohio Ct. App. 2020) ("Publication of a defamatory statement consists of communicating the statement to a person or persons other than the person who is the subject of the statement.") (citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (Ohio 1975).

In sum, none of the challenged statements qualifies as defamation under Ohio law. Accordingly, Count V is DISMISSED without prejudice.

### 5. Tortious Interference with Business Relations Claim

In support of her tortious interference with business relationships claim, Plaintiff alleges that she "had and continues to have multiple prospective business relationships with customers and other business partners regarding the Tumblerone," that "Defendants were aware" of those business relationships "as evidenced Defendants' multiple references to Ms. Molnarova in social media posts," and that Defendants' "direct criticism of [her] pricing and accusations that she and/or her associates were engaging in criminal activity" on social media "caused customers to purchase [Defendants' products] instead of the Tumblerone," resulting in "lost sales and lost business partnerships." (ECF No. 1 ¶¶ 156–60).

Under Ohio law, the elements of tortious interference with a business relationship are: (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.*, 148 Ohio App.3d 596, 774 N.E.2d

775, 780 (Ohio Ct. App. 2002). Thus, the tort of interference with a business relationship generally occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another[.]" *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283, 1294 (Ohio 1995).

Defendants argue that the claim should be dismissed because Plaintiff fails to establish the second element, namely that Defendants had knowledge of Plaintiff's business relationships or that she had a valid business relationship with which Defendants has interfered. (*See* ECF No. 14-1, at 8–9). Although the Court finds that Plaintiff has plausibly alleged this element, (*see* ECF No. 1 ¶ 158, Defendants cite *Smith v. Nat'l W. Life* for the proposition that "failure to plead the Defendant had knowledge of the Plaintiff's business relationships or contracts resulted in the plaintiff failing to state a claim." (*See* ECF No. 14-1, at 8–9) (citing 2017-Ohio-4184, ¶ 9, 92 N.E.3d 169, 172 (Ohio Ct. App. 2017)). Defendants, however, mischaracterize *Smith*'s holding and procedural posture. There, the court held that summary judgment in favor of the defendant was appropriate where the tortious interference claim was based on the same conduct underlying the untimely defamation claim. *See Smith*, 2017-Ohio-4184, ¶ 18, 92 N.E.3d at 175. Although the trial court did not discuss the statute of limitations issue, the court held that the defamation claim was barred by the statute of limitations. *Id.*

The case is nonetheless fatal for Plaintiff's tortious interference claim, particularly as it relates to the second element—intentional interference. As courts in Ohio have recognized, *Smith* stands for the proposition that, where a tortious interference claim is premised upon the defendant allegedly making defamatory statements, that claim will fail if the allegedly defamatory statements are not actionable. *See Wallake Power Sys., LLC v. Engine Distributors*, Inc., No. 2:18-CV-423,

2019 WL 5588922, at *7 (S.D. Ohio Oct. 30, 2019) (citing *Smith*, 2017-Ohio-4184, ¶ 13, 92 N.E.3d at 173 (citing *Pro. Recovery Servs., Inc. v. Gen. Elec. Cap. Corp.*, 642 F. Supp. 2d 391, 408 (D.N.J. 2009) (noting that, where tortious interference claim is "based on allegedly defamatory statements" and "the defamation cause of action fails," the tortious interference claim necessarily fails as well"))).

Because Plaintiff's claim of tortious interference is based on the same allegations underlying her defamation claim, and that claim fails as a matter of law, *see* Part III(B)(4), Plaintiff's tortious interference claim likewise fails.

Accordingly, Count VII is DISMISSED without prejudice.

### 6. *Telecommunications Harassment Claim*

Finally, Plaintiff alleges that several of Defendants' social media posts constitute telecommunications harassment in violation of Ohio Revised Code § 2917.21 (hereinafter, "RC 2917.21"). The factual allegations underlying this claim consist of, *inter alia,* Mr. Moore identifying Plaintiff and her partner by name in a TikTok video, (ECF No. 1 ¶ 52), in which he also implored followers to "get petty," (*See* ECF No. 1 ¶ 56); "threaten[ing] that 'if you misrepresent yourself as legal, that's a crime, buddy. Bye. Get a better legal team, Jana, Jana, Jan,' (*Id*. ¶ 53); and "solicit[ing] product names from his social media following "to encourage intimidating and misogynistic abuse against Ms. Molnarova by his followers." (*Id*. ¶ 57). As a result of this particular solicitation, Plaintiff notes that one of Mr. Moore's followers mockingly suggested "Jana Banana Fanna Fonana Fee-fi fo Jana" as proposed names for Defendants' products, while another suggested "Witch, Bitch not Jana" and "Bedazzled BitchWitch." (*Id*. ¶¶ 59–60).

Although R.C. 2917.21 is a criminal statute, Ohio Revised Code § 2307.60(A)(1) "independently authorizes a civil action for damages caused by criminal acts." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, ¶ 6, 75 N.E.3d 203. To establish a claim under Ohio Rev. Code § 2307.60(A)(1), proof of an underlying criminal conviction is not required. *Buddenberg*, 2020-Ohio-3832 at ¶ 6. Nevertheless, "regardless of the absence of an underlying conviction, the elements for the alleged criminal offense of coercion must be established by [plaintiffs]." *See Hoerig v. Bowling Green State Univ.*, 2023-Ohio-3189, ¶¶ 52-53, 224 N.E.3d 567, 576-77 (Ohio Ct. App. 2023). As relevant here, R.C. 2917.21 provides that "[n]o person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." R.C. 2917.21(B)(1).

Plaintiff's allegations plainly establish that Defendants' videos and comments on social media constitute a "telecommunication" within the meaning of R.C. 2917.21. *See Plunderbund Media, L.L.C v. DeWine*, 753 F. App'x 362, 368 (6th Cir. 2018) ("Since at least 2008, Ohio courts have found that definition of telecommunication to encompass posts on the internet." (collecting cases)); *In re C.W.*, 2019-Ohio-5262, ¶ 13, 2019 WL 6977924, at *2 (Ohio Ct. App. 2019) (finding "comments to the Instagram post [that] were part of the record via the screenshot[s]" demonstrated a telecommunication).

The more difficult question is whether Defendants' comments constitute "abuse," a "threat," or "harassment" under R.C. 2917.21. This Court finds that they do not. Under Ohio law, "harassment" under R.C. 2917.21 has been interpreted to mean "[w]ords, conduct, or action ([usually] repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in the person and serves no legitimate purpose." *See In re C.W.*,

2019-Ohio-5262, ¶ 16 (Ohio Ct. App. 2019). "The Ohio Supreme Court has defined 'threat' as representing 'a range of statements or conduct intended to impart a feeling of apprehension in the victim, whether of bodily harm, property destruction, or lawful harm, such as exposing the victim's own conduct.'" *State v. Ham*, 1st Dist. Hamilton No. C-180338, 2019-Ohio-3468, ¶ 11 (quoting *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 39). Finally, "abuse" is what one would consider "cruel or violent treatment of someone; [specifically] physical or mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." *Id*. (citing Black's Law Dictionary (11th Ed.2019)).

Defendants' purportedly harassing comments, while undoubtedly offensive, fail to establish the level of harassment that would support a criminal violation under R.C. § 2917.21. Plaintiff has not pled with sufficient particularity how, if at all, Defendants' name-calling and insults was so pervasive or continuous so as to cause her "substantial emotional distress," *In re C.W.*, 2019-Ohio-5262, ¶ 16, that it imparted any feeling of apprehension in her "of bodily harm, property destruction, or lawful harm," *State v. Ham*, 2019-Ohio-3468, ¶ 11 (Ohio Ct. App. 2019), or otherwise constituted "cruel or violent treatment," *id.* The statute's legislative history supports this Court's conclusion. Enacted in 1972, the code initially prohibited communications made "with purpose to harass" and "without purpose of legitimate communication." Ohio Rev. Code § 2917.21(B) (1972). It was then amended in 1981 to outlaw communications "with purpose to abuse, threaten, annoy, or harass another person." *Id*. § 2917.21(B) (1981). The 1999 version of the law, now in effect, dropped the word "annoy." *Id.* §§ 2917.21(B) (1999), 2917.21(G)(3), 2913.01(X). Consistent with that legislative policy, Ohio courts have emphasized that "[c]onduct rises to the level of criminal harassment . . . if the accused intended to alarm or to cause substantial emotional distress to the recipient, *not just to annoy the recipient*." *See State v. Arnold*, 2022-Ohio-

3147, ¶¶ 8-9 (Ohio Ct. App. 2022) (cleaned up)).   Plaintiff has not alleged here that Defendants' conduct rose above the level of annoying of Plaintiff.  *Cf. A.W. v. Kircher*, 2024-Ohio-2115, ¶¶ 27-46 (Ohio Ct. App. 2024) (finding that allegations supported a violation of R.C. 2917.21 where defendant sent plaintiff "several harassing and threatening emails" in which he "fak[ed] nonexistent court orders," "maliciously attack[ed] appellant's Taiwanese nationality and her American fiancé," and stated that she "would soon be in an alternative house with no internet when such has never happened").

Because Plaintiff's allegations do not establish that Defendants' comments constitute "harassment," "threats," or "abuse" within the meaning of R.C. § 2917.21, Plaintiff fails to plausibly state a telecommunications harassment claim.

Accordingly, Count VII is DISMISSED without prejudice.

### C.  Request for Leave to Amend

Plaintiff concludes her opposition brief with the following request to amend her complaint: "[I]n the event that the Court finds that the any of the claims should be dismissed from the Complaint, then Plaintiff moves the Court for leave to file an Amended Complaint against Defendants as the parties have not yet conducted discovery."  (ECF No. 17 at 17–18).

Under Federal Rule of Civil Procedure 15, courts "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2). Requesting leave to amend under Rule 15(a), however, is governed by Rule 7(b), which requires that a motion "shall state with particularity the grounds" for such relief.  *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). Plaintiff never filed a motion for leave to amend, attached a proposed amended complaint to its brief in opposition, or otherwise presented grounds for her proposed amendments.

Nonetheless, the Federal Rules of Civil Procedure "provide for a liberal policy of permitting amendments to ensure that claims are adjudicated on their merits." *See Turner v. Dean*, 844 F.2d 789 (6th Cir. 1988).  Given the policy of liberality behind Rule 15(a), a district court is afforded broad discretion in granting Plaintiff leave to amend.  *Turner*, 844 F.2d at 789.  Thus, notwithstanding the bare nature of Plaintiff's request for leave, this Court has held that in cases "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 711 (S.D. Ohio 2016) (*sua sponte* granting leave to amend following grant of a motion to dismiss) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003)).  Because Defendants have not shown that granting leave to amend would cause any undue delay or otherwise constitutes bad faith or dilatory motive on the part of the Plaintiff, *see Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), the Court exercises its discretion to *sua sponte* grant leave to amend.

Accordingly, the Court **GRANTS** Plaintiff leave to file an amended complaint asserting claims consistent with the foregoing Opinion and Order within **THIRTY DAYS** from entry of this Order on the Court's docket.  Plaintiff is further **CAUTIONED** that failure to file an amended complaint within thirty days, consistent with the foregoing opinion, and in compliance with the Court's local rules and the Federal Rules of Civil Procedure will result in dismissal of these claims with prejudice and the closure of this action.

## IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion to Dismiss (ECF No. 14).  Counts I through VII of the Complaint are **DISMISSED WITHOUT PREJUDICE**.  The Court further **GRANTS** Plaintiff leave to amend her complaint consistent with the foregoing.  Plaintiff is **ORDERED** to file any amended complaint within **THIRTY DAYS** from entry of this Order on the Court's docket.

      **IT IS SO ORDERED.**

                                    **ALGENON L. MARBLEY**
                                    **UNITED STATES DISTRICT JUDGE**

**DATE:  September 16, 2024**